1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DOLYN KEITH BARROW,

11             Plaintiff,                    No. 2:10-cv-00698 KJN

12        v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,

14

15             Defendant.              ORDER
     _____/

16             In his motion for summary judgment, plaintiff seeks judicial review of a final

17   decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's

18   applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act

19   ("Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[1]  (Pl.'s Mot. for

20   Summ. J. ("Pl.'s Motion"), Dkt. No. 21 at 1.)

21             Plaintiff makes four arguments within his motion for summary judgment.  First,

22   plaintiff contends that the administrative law judge (the "ALJ") failed to sufficiently develop the

23   administrative record, because he failed to "secure" a treating physician's Residual Functional

24   _____

25        [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to
26   proceed before a United States Magistrate Judge.  (Dkt. Nos. 8, 11.)

                                          1

1    Capacity assessments or order a consultative examination.  (Pl.'s Mot. at 20.)   As part of this

2    argument, plaintiff asserts that the ALJ's decision is necessarily erroneous because "the record

3    contained no [Residual Functional Capacity] assessment by a treating or examining physician."

4    (Id. at 20-21.)

5           Plaintiff's second argument is that the ALJ failed to include plaintiff's

6    "uncontrolled hypertension and plantar fibromastosis/plantar faciitis" as "severe" impairments at

7    step two of the analysis.  (Pl.'s Mot. at  22.)

8           Plaintiff's third argument is that the ALJ failed to "utilize the proper legal

9    standard in evaluating" plaintiff's obesity.  (Id. at 22.)  As part of this argument, plaintiff

10   contends that the ALJ improperly concluded that plaintiff's obesity did not exacerbate any

11   functional limitations arising from his severe impairments.  (Id. at 23.)

12          Plaintiff's fourth argument is that the ALJ "failed to properly credit" plaintiff's

13   testimony regarding the nature and extent of his functional limitations insofar as that testimony

14   conflicted with the ALJ's RFC finding.  (Pl.'s Mot. at 26-27.)  As part of this argument, plaintiff

15   challenges the ALJ's conclusion that plaintiff's sleep apnea was "alleviated" with CPAP

16   treatment.  (Id. at 27.)

17          The Commissioner filed an opposition to plaintiff's motion and a cross-motion for

18   summary judgment.  (Def.'s Mot. for Summ. J. ("Def.'s Motion"), Dkt. No. 25.)  Plaintiff did not

19   file a reply in support of his motion.

20          For the reasons stated below, the court denies plaintiff's motion for summary

21   judgment and grants the Commissioner's cross-motion for summary judgment.

22   ////

23   ////

24   ////

25   ////

26

1   I.      BACKGROUND[2]

2           A.      Procedural Background

3           Plaintiff applied for benefits on July 26, 2006, alleging a disability onset date of

4   November 1, 2005.  (Administrative Record ("AR") 40, 127-28, 132-39.)  The Social Security

5   Administration denied plaintiff's applications both initially and upon reconsideration.  (AR 11.)

6           On September 11, 2008, the ALJ conducted a hearing regarding plaintiff's claims.

7   (AR 11-22.)  Plaintiff, who was represented by an attorney, testified at the hearing.  (AR 23-74.)

8   A vocational expert (the "VE") also testified at the hearing.  (Id.)  During the hearing, plaintiff

9   confirmed that his previous employment included work as a juvenile "at risk" counselor, a

10  security officer, and a ship builder.  (AR 37-43.)

11          In a decision dated January 9, 2009, the ALJ determined that plaintiff was not

12  disabled.[3]  (AR 11-22.)  The ALJ found that while plaintiff could not perform his past relevant

13

14          [2] Because the parties are familiar with the factual background of this case, including
15  plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
    facts related to plaintiff's impairments and medical history will be addressed only insofar as they
16  are relevant to the issues presented by the parties' respective motions.

17          Additionally, to the extent the undersigned uses the present tense in referring to or
    describing plaintiff's alleged conditions or functional abilities, or the ALJ's or Appeals Council's
18  characterizations of the same, the undersigned clarifies that such references are to plaintiff's
    conditions or functional abilities at the time of the ALJ's or Appeals Council's decision, unless
19  otherwise indicated.

20          [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income ("SSI") is paid
21  to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both provisions,
    disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to
22  "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
    1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  20 C.F.R. §§
23  423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
    following summarizes the sequential evaluation:

24          Step one:  Is the claimant engaging in substantial gainful activity?
            If so, the claimant is found not disabled.  If not, proceed to step
25          two.

26          Step two:  Does the claimant have a "severe" impairment?  If so,

3

1  work, plaintiff could nonetheless perform other work in the national economy.  (AR 17-22.)  The

2  ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

3  plaintiff's request for review.  (AR 4-6.)  Plaintiff subsequently filed this action.

4           B.       Summary Of The ALJ's Findings

5           The ALJ conducted the required five-step evaluation and concluded that plaintiff

6  was not disabled within the meaning of the Act.  (AR 21-22.)  At step one, the ALJ concluded

7  that plaintiff had not engaged in substantial gainful activity since November 1, 2005, plaintiff's

8  amended alleged date of onset of disability.  (AR 21.)  At step two, the ALJ concluded that

9  plaintiff had the following "severe" impairments: "left eye blindness, chronic kidney disease,

10  obesity and sleep apnea."  (AR 18, 21.)  The ALJ found that plaintiff's "feet impairment is not

11  severe" because it "is only periodic and alleviated with orthotics and injections," and because

12  plaintiff made "no complaints" about feet impairments "from July 2006 to February 2008."  (AR

13  18.)  The ALJ noted that, in any case, "there is no reason to believe that ongoing [feet] problems,

14  if any, would not be accommodated by alternating between sitting and standing."  (AR 18.)

15           At step three, the ALJ determined that none of plaintiff's impairments "either

16  alone or combined meets or medically equals" one of the listed impairments in the applicable

17

18                    proceed to step three.  If not, then a finding of not disabled is
                      appropriate.

19                    Step three:  Does the claimant's impairment or combination of
                      impairments meet or equal an impairment listed in 20 C.F.R., Pt.
20                    404, Subpt. P, App.1?  If so, the claimant is automatically
                      determined disabled.  If not, proceed to step four.
21
                      Step four:  Is the claimant capable of performing his past work?  If
22                    so, the claimant is not disabled.  If not, proceed to step five.

23                    Step five:  Does the claimant have the residual functional capacity
                      to perform any other work?  If so, the claimant is not disabled.  If
24                    not, the claimant is disabled.

25  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in
    the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The
26  Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1  regulations.  (AR 19, 21.)

2     Between steps three and four, the ALJ assessed plaintiff's residual functional

3  capacity ("RFC").  (AR 19, 22.)  The ALJ accorded "substantial weight" to the opinion of the

4  non-examining state agency medical consultant, Dr. A.G. Dipsia.  (AR 20.)  Dr. Dipsia opined

5  that plaintiff could perform "light work" with vision-related limitations.  (AR 20.)  In light of Dr.

6  Dipsia's opinion, the "objective clinical findings and the claimant's activities and treatment

7  history" (AR 20 (citing AR 75, 76, 248-52)), and after "careful consideration of the entire

8  record," the ALJ found that plaintiff:

9        has the residual functional capacity to perform essentially
      the full range of light work as defined in 20 C.F.R.

10       404.1567(b) and 416.967(b), but due to pain, needs to be
      able to alternate between sitting and standing and avoid

11       work requiring good distant visual acuity, depth
      perception, and broad field of vision.

12

13 (AR 22.)

14    In discussing this RFC determination, as well as in discussing the step three

15 analysis, the ALJ explained that plaintiff's "obesity has contributed to his alleged physical

16 limitations such as his sleep apnea and his back pain.  However, the medical record and

17 testimony show that the claimant's physical deconditioning is remediable with physical exercise

18 and moderate consumption of food.  In short, his symptoms are alleviated with changes in his

19 sedentary lifestyle." (AR 19.)  The ALJ explained that plaintiff's other impairments "do not

20 preclude modification of food intake or a routine home exercise program.  The claimant must

21 understand that the majority of his alleged impairments (i.e., high blood pressure, back pain, feet

22 pain) are related to his weight."  (Id.)  The ALJ found that plaintiff did indeed suffer from several

23 medically determinable physical impairments, but also found that plaintiff's "statements

24 concerning the intensity, persistence, and limiting effects" of the symptoms of such impairments

25 "are not credible to the extent they are inconsistent with the residual functional capacity

26 assessment made herein."  (AR 20.)  The ALJ concluded that "the claimant's obesity in

1  combination with his other alleged impairments does not increase the severity or functional

2  limitations of those impairments." (AR 19.) The ALJ also found that "[t]here is simply no

3  compelling evidence that the claimant's alleged impairments significantly impact his day-to-day

4  functioning." (AR 20.) The ALJ repeatedly noted that plaintiff "performed a variety of jobs in

5  the past in spite of his obesity," and that "claimant has held a variety of jobs in spite of his

6  impairments." (AR 19, 20.)

7        After assessing plaintiff's RFC, the ALJ proceeded to step four of the analysis and

8  determined that plaintiff was not capable of performing any of his past relevant work. (AR 21.)

9        At step five, the ALJ accepted the VE's testimony and determined that a

10  hypothetical individual with plaintiff's RFC could perform several other jobs existing in the

11  national economy, including that as an "Information Clerk," "Storage Facility Clerk," and

12  "Office Helper." (AR 17, 21-22.)

13  II.    STANDARDS OF REVIEW

14        The court reviews the Commissioner's decision to determine whether it is (1) free

15  of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v.

16  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

17  Cir. 2009). This standard of review has been described as "highly deferential." Valentine v.

18  Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence means

19  more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

20  reasonable mind might accept as adequate to support a conclusion.'" Bray v. Comm'r of Soc.

21  Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

22  1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

23  Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)). "The ALJ is responsible for determining

24  credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews,

25  53 F.3d at 1039; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the

26  final arbiter with respect to resolving ambiguities in the medical evidence.").

1    Findings of fact that are supported by substantial evidence are conclusive.

2    42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where

3    the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its]

4    judgment for the ALJ's."  Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528

5    F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational

6    interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676,

7    679 (9th Cir. 2005)); Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1196 (9th Cir. 2004).

8    However, the court "must consider the entire record as a whole and may not affirm simply by

9    isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting

10   Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue,

11   504 F.3d 1028, 1035 (9th Cir. 2007).

12   III.    ANALYSIS

13          A.    The ALJ Did Not Err By Failing To Recontact Plaintiff's Treating
                  Physician Or Failing To Further Develop The Record
14

15          "The ALJ in a social security case has an independent 'duty to fully and fairly

16   develop the record and to assure that the claimant's interests are considered.'"  Tonapetyan v.

17   Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th

18   Cir. 1996)); Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  Ambiguous evidence, or the

19   ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence,

20   triggers the ALJ's duty to conduct an appropriate further inquiry.  Smolen, 80 F.3d at 1288;

21   Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir.1998).  "An ALJ is

22   required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ

23   to make a disability determination."  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005);

24   Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) ("the requirement for additional

25   information is triggered only when the evidence from the treating medical source is inadequate to

26   make a determination as to the claimant's disability.")  Plaintiff bears the burden of proving his

7

1    disability, and he cannot shift that burden by arguing that the ALJ should have developed the

2    record further.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  "The ALJ may discharge

3    this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions

4    to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing

5    to allow supplementation of the record."  Tonapetyan, 242 F.3d at 1150 (citing Tidwell v. Apfel,

6    161 F.3d 599, 602 (9th Cir. 1998)).

7            Plaintiff argues that "the record contained no residual functional capacity (RFC)

8    assessment by a treating or examining physician," and that the "only RFC assessment in the

9    record was a check-off-the-box form completed by a non-examining State Agency physician in

10   November 2006."  (Pl.'s Mot. at 20.)  Plaintiff explains that a document in the record suggests

11   that Dr. Will, plaintiff's treating physician, may have completed RFC assessment forms — and

12   that such forms are absent from the record. (Id. (citing AR 324).)  As a result, according to

13   plaintiff, the ALJ erred by not re-contacting Dr. Will and inquiring about the potentially "missing

14   RFC assessments."  (Id.)  Plaintiff contends that the potentially "missing RFC assessments"

15   created an "ambiguity" in the record that the ALJ was duty-bound to resolve.  (Id. at 20-21.)

16           Contrary to plaintiff's argument, the ALJ fulfilled his duty to develop the record in

17   this case.  A duty to recontact a treating physician is triggered only when the evidence is otherwise

18   insufficient to enable the ALJ to determine whether a disability exists, and here, the evidence was

19   sufficient to make such a determination.  (AR 20-22.)  For instance, in making his findings, the

20   ALJ reviewed the "entire record" (AR 19), which included treatment notes from Dr. Will (AR

21   322-24), as well as an RFC assessment from the non-examining agency physician Dr. Dipsia.

22   (AR 20.) [4]  Plaintiff presumes that a potentially missing RFC assessment necessarily renders the

23

24        [4]  Plaintiff also argues that Dr. Dipsia's November 2006 RFC assessment was insufficient
     because it was dated more than two years before the administrative hearing and because it
25   predated the worsening of plaintiff's kidney disease.  (Pl.'s Mot. at 20.)  But the supposedly
     "missing" RFC assessment from Dr. Will was dated only three months later, in January 2007,
26   and therefore would also predate the administrative hearing and the kidney deterioration by

1 record ambiguous.  Yet, plaintiff has not cited authorities supporting his argument that, because

2 an RFC assessment *may* have been completed[5] and is not within the record, this necessarily

3 creates the sort of "ambiguity" that renders the remaining evidence "inadequate" to determine

4 whether a disability exists.  (Pl.'s Mot. at 20-21.)  Similarly, plaintiff has not cited authorities

5 supporting the argument that, every time a record lacks an RFC assessment from either "a treating

6 or examining physician" (Pl.'s Mot. at 21), that record is necessarily insufficient and therefore

7 requires further development (i.e., by a "consultative examination" or otherwise).  Indeed,

8 controlling authority is to the contrary: the reports of non-examining physicians like Dr. Dipsia

9 can constitute substantial evidence.  See Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)

10 ("[T]he reports of consultative physicians called in by the Secretary may serve as substantial

11 evidence.").

12        Plaintiff failed to raise the issue of "missing RFC assessments" during the

13 administrative hearing.  (AR 23-74.)  Instead, plaintiff now invokes his own failure to introduce a

14 treating physician's RFC assessment in efforts to raise an ambiguity.  See Mayes, 276 F.3d at 459

15 (holding that "[i]t was [plaintiff's] duty to prove she was disabled" and that plaintiff could not

16 "shift her own burden to the ALJ" by arguing that he improperly developed the record).  In any

17 event, even if there were some "ambiguity" caused by Dr. Will's so-called "missing RFC

18 assessment," (Pl.'s Mot. at 20), the ALJ satisfied his duty under Tonapetyan by holding the record

19 open after the hearing (AR 28-29, 73, 432-39) and in fact receiving other materials.  See

20 Tonapetyan, 242 F.3d at 1150.  As a result, plaintiff had the opportunity to supplement the record

21 to clarify any ambiguities he now raises.  Plaintiff identifies no reason why he could not have

22 timely supplemented the record to include any potential "missing RFC assessments."  (Pl.'s Mot.

23 _____

24 roughly the same amount of time.

25        [5] It is unclear whether any RFC assessments by Dr. Hill ever actually existed.  The only
evidence of such assessments is Dr. Hill's notation: "Forms were filled out today, January 29,
2007, for Medical Assessment of Ability to Perform Work-Related Activities, Mental and

26 Physical."  (AR 324.)  Plaintiff never supplemented the record with any such assessments.

9

1   at 20.)  Accordingly, plaintiff has not shown that the ALJ failed to discharge a duty to recontact

2   Dr. Hill or otherwise further develop the record in this case.

3         B.        The ALJ Supported His List Of Plaintiff's "Severe" Impairments With
                        Substantial Evidence, And In Any Event, The ALJ's RFC Assessment

4                         Accounts For Plaintiff's Foot Impairments And Hypertension

5         Plaintiff's second argument is that the ALJ failed to include plaintiff's

6   "uncontrolled hypertension and plantar fibromastosis/plantar faciitis" as "severe" impairments at

7   step two of the analysis.  (Pl.'s Mot. at  22.)

8         A medical impairment is deemed "severe" when "alone or in combination with

9   other medically determinable physical or mental impairment(s), it significantly limits an

10   individual's physical or mental ability to do basic work activities."  Burch v. Barnhart, 400 F.3d

11   676, 682 (9th Cir.2005); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

12         a.    Foot Impairments

13         The ALJ found that plaintiff's foot impairments were not severe.  (AR 18.)  He

14   found that the impairments were "only periodic and alleviated with orthotics and injections.

15   [Plaintiff] made no complaints from July 2006 to February 2008."  (Id.)  He also found that

16   "[t]here is no reason to believe that ongoing [foot] problems, if any, would not be accommodated

17   by alternating between sitting and standing."  (Id.)

18         Plaintiff argues that his foot impairments were not actually "alleviated" with

19   orthotics and injections, as "the record documented that orthotics and injections helped but that

20   the impairment continued to come back."  (Pl.'s Mot. at 24.)  Plaintiff lists various portions of the

21   record substantiating his foot impairments.  (Id.)

22         While plaintiff is correct that certain parts of the record may well support the

23   existence of "severe" foot impairments, plaintiff fails to compellingly demonstrate how the ALJ's

24   failure to deem the foot impairments "severe" resulted in anything more than harmless error.

25   Indeed, plaintiff does not squarely address the ALJ's finding that "[t]here is no reason to believe

26   that ongoing problems, if any, would not be accommodated by alternating between sitting and

1  standing." (AR 18.) Plaintiff does not suggest how any of his foot impairments would not be

2  accommodated by the RFC's allowance for plaintiff to sit and stand at will. (AR 22.) Further,

3  substantial evidence confirms the ALJ's finding that plaintiff's foot impairments were "alleviated

4  with orthotics and injections." (AR 18.) For instance, plaintiff reported good results from

5  orthotics between June 2006 and November 2007. (AR 226[6], AR 271 ("plantar fasciitis

6  responding [to] orthotics").) The last record regarding foot pain, dated June 2008, indicated that

7  plaintiff required other treatment, including injections for pain, and sought follow up. (AR 334.)

8  Plaintiff reported that the injection went well and that he was "able to walk without pain," as well

9  as his understanding that such relief may be temporary. (Id.) Plaintiff's podiatrist noted that

10 plaintiff would "make sure he wears the orthotics" in the future. (Id.) The ALJ specifically noted

11 each of these facts from the medical evidence. (AR 16 (citing AR 334).) As defendant

12 persuasively argues, because the medical record confirms that plaintiff's foot impairments

13 responded to medication and treatment, the ALJ could properly find that they were not severe

14 impairments. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)

15 ("Impairments that can be controlled effectively with medication are not disabling for the purpose

16 of determination eligibility for . . . benefits.") Accordingly, plaintiff has not shown that the ALJ's

17 designation of plaintiff's foot impairments as "not severe" amounted to anything more than

18 harmless error. Moreover, substantial evidence supports the ALJ's decision to categorize

19 plaintiff's foot impairments as not "severe."

20         b.    Hypertension

21         The ALJ found that plaintiff's hypertension was "well controlled on September 27,

22 2006, through April 1, 2008 [when] his medication was increased for better control." (AR 16

23 (citing AR 307 ("well controlled on present meds.").) Plaintiff argues that "this observation is

24

25         [6] "The orthotics are comfortable and most of [plaintiff's] arch pain is gone. He is very
   happy with his progress. Orthotics conform to feet. No signs of irritation on his feet from the
   orthotics. No tenderness to palpation of medial slips of plantar fascia BL. Plantar fasciitis

26 resolved with functional orthotics." (AR 226.)

1   incorrect and controverted by the record." (Pl.'s Mot. at 25.) Plaintiff cites evidence in the record

2   showing some periods in which plaintiff's hypertension was controlled and other periods when it

3   was not. (Id. (citing AR 392 ("uncontrolled" on May 21, 2007); 369 ("uncontrolled" on February

4   4, 2008); 351 ("well controlled" on May 5, 2008; 340 ("uncontrolled" on May 20, 2008).) As of

5   the administrative hearing, though, plaintiff himself testified that his hypertension had "stabled

6   out" as of the previous day based on a change in medication. (AR 57.) The ALJ was entitled to

7   rely on plaintiff's own testimony on this issue. "The ALJ is responsible for determining

8   credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and here, in

9   resolving record's ambiguities regarding plaintiff's hypertension, substantial evidence supported

10  the ALJ's determinations. See Andrews, 53 F.3d at 1039; Tommasetti, 533 F.3d 1035, 1041 (9th

11  Cir. 2008).

12          In light of the medical evidence and plaintiff's own hearing testimony, it cannot be

13  said that the ALJ's findings regarding hypertension were not supported by substantial evidence.

14  Moreover, plaintiff fails to explain how his hypertension, whether or not labeled a "severe"

15  impairment, significantly limited his physical ability to do work, or that such resulting functional

16  limitations were not accommodated by the ALJ's RFC assessment. Accordingly, plaintiff has not

17  shown the ALJ's determination regarding plaintiff's hypertension to be unsupported by substantial

18  evidence, and plaintiff has not shown that omitting hypertension from the list of "severe"

19  impairments resulted in anything other than harmless error.

20          c.    In Any Event, The ALJ Accounted For All Of Plaintiff's Ailments In
                  Assessing Plaintiff's RFC
21

22          Plaintiff argues that the ALJ's failure to deem his foot impairments and

23  hypertension as "severe" means "there is no assurance that they [had] any role whatsoever in the

24  determination of the claimant's disability." (Pl.'s Mot. at 25.) Plaintiff's argument overlooks the

25  fact that, in determining a claimant's RFC, the ALJ must consider "all" of the claimant's

26  impairments, including impairments that are not severe. Carmickle v. Comm'r Soc. Sec. Admin.,

1    533 F.3d 1155, 1164 (9th Cir. 2008) (citing Social Security Ruling 96-8p).  Contrary to plaintiff's

2    arguments, the ALJ based his RFC assessment upon a careful review of the "entire record."  (AR

3    19.)  The record contains references to plaintiff's hypertension and foot impairments, and it can be

4    reasonably inferred that the ALJ at least "considered" each of these impairments in rendering his

5    decision.  See Carmickle, 533 F.3d at 1164.  Given the ALJ's consideration of the "entire record"

6    (AR 19) and the amount of testimony the ALJ elicited on these topics during the hearing, the

7    undersigned infers that the ALJ considered such testimony in assessing plaintiff's RFC.  See

8    Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences

9    reasonably drawn from the record . . . .") (citing Gallant v. Heckler, 753 F.2d 1450, 1452-53 (9th

10   Cir. 1984); e.g., LaFaelle v. Astrue, No. C09-0496-JCC, 2010 WL 1286804, at *14-16 (W.D.

11   Wash. March 25, 2010) (unpublished) (upholding ALJ's RFC assessment even though it did not

12   explicitly discuss all impairments plaintiff alleged, because the ALJ discounted several medical

13   opinions offered by plaintiff's physicians, the ALJ's decision "reflect[ed] [the ALJ's] thorough

14   consideration of the medical evidence," and where the RFC "specifically accounted for many of

15   plaintiff's concerns").

16        C.        Even If The ALJ Improperly Evaluated Plaintiff's Obesity, This Evaluation
                    Did Not Render His RFC Assessment Erroneous
17

18            Plaintiff's third argument is that the ALJ failed to "utilize the proper legal standard

19   in evaluating" plaintiff's obesity.  (Pl's Mot. at 22.)  As part of this argument, plaintiff contends

20   that the ALJ improperly concluded that plaintiff's obesity did not exacerbate functional

21   limitations arising from any of his severe impairments.  (Id. at 23.)

22            Plaintiff cites Orn v. Astrue and argues that, by discussing plaintiff's obesity and

23   noting that "his symptoms are alleviated with changes in his sedentary lifestyle" (AR 19), the ALJ

24   "engaged in exactly the type of 'blame the victim' obesity analysis proscribed by Orn.  (Pl.'s Mot.

25   at 23 (citing Orn v. Astrue, 495 F.3d 625, 636-37 (9th Cir. 2007).)  However, Orn addressed the

26   propriety of an ALJ's using a claimant's failure to exercise in the context of an adverse credibility

13

1   determination.  Orn, 495 F.3d at 636-37.  Plaintiff's contentions regarding the ALJ's use of the

2   "proper legal standard in evaluating" plaintiff's obesity does not include an argument that the ALJ

3   used improper, obesity-based grounds for an adverse credibility determination in violation of Orn;

4   instead, plaintiff takes issue with the ALJ's general "punitive" mentions of obesity and weight.

5   (Pl.'s Mot. at 22-23.)  Indeed, plaintiff devotes a separate section of his briefing to the ALJ's

6   adverse credibility determination (id. at 27-29), and nowhere does plaintiff specifically argue that

7   the ALJ's *credibility determination* violated Orn.  Accordingly, while the ALJ's discussion of

8   plaintiff's obesity did include the ALJ's sentiments that plaintiff's "symptoms are alleviated with

9   changes in his sedentary lifestyle" and "the majority of his alleged impairments (i.e. high blood

10  pressure, back pain, feet pain) are related to his weight" (AR 19), the ALJ did not improperly

11  invoke these sentiments in analyzing plaintiff's credibility.  Accordingly, plaintiff's reliance on

12  Orn is misplaced, as the discussion of obesity in that case was limited to the context of using a

13  claimant's "failure to lose weight" in assessing the claimant's *credibility*.  Orn, 495 F.3d at 636-

14  37.

15          While the ALJ did not specifically invoke plaintiff's failure to lose weight as part

16  of the decision to discredit some of plaintiff's testimony, the ALJ did reference plaintiff's need to

17  lose weight and/or exercise, and did find that plaintiff's "overall health should benefit with

18  continued weight loss."  (AR 19-20.)  At most, as described below, these references amount to

19  harmless error.  See Burch, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors

20  that are harmless.") (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir.1990)).

21          a.      Applicable Law

22          Social Security Ruling 02-1p ("SSR 02-1p")[7] states that "[o]besity is a complex,

23  chronic disease characterized by excessive accumulation of body fat."  It further states that obesity

24  "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory,

25

26          [7]  SSR 02-1p is available at Policy Interpretation Ruling Titles II and XVI: Evaluation of
     Obesity, 67 Fed. Reg. 57,859-02 (Sept. 12, 2002).

1    and musculoskeletal body systems," and "may also cause or contribute to mental impairments

2    such as depression."  SSR 02-1p also requires an ALJ to consider an individual's obesity at steps

3    two through five of the sequential evaluation, and requires that obesity be considered in

4    combination with the individual's other impairments.[8]  It also states that "[an adjudicator] will not

5    make assumptions about the severity or functional effects of obesity combined with other

6    impairments.  Obesity in combination with another impairment may or may not increase the

7    severity or functional limitations of the other impairment.  [The adjudicator] will evaluate each

8    case based on the information in the case record."  Ninth Circuit case law also requires an ALJ to

9    determine the effect of a claimant's obesity on his or her other impairments.  Celaya v. Halter, 332

10   F.3d 1177 (9th Cir. 2003).

11           In Celaya, the Ninth Circuit held that an ALJ should consider the effect of a

12   claimant's obesity, in combination with the claimant's other impairments, on the claimant's health

13   and ability to work even where the claimant does not raise the issue.  Id. at 1182.  The Ninth

14   Circuit Court of Appeals reasoned that: (1) the claimant had implicitly raised the issue of obesity

15   in her report of symptoms; (2) the record clearly showed that the claimant's obesity was at least

16   close to the listing criterion, and was a condition that could exacerbate the claimant's reported

17   illness; and (3) in light of the claimant's pro se status, the ALJ's personal observation of the

18   claimant and the information in the record should have alerted him to the need to develop the

19   record on the claimant's behalf.  Id.

20           More recently, in Burch, the Ninth Circuit distinguished its holding in Celaya, and

21   found no reversible error in an ALJ's failure to consider the claimant's obesity at multiple steps of

22

---

23   [8] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and
     policy."  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although "SSRs do not
24   carry the 'force of law,' . . . they are binding on ALJs nonetheless.  Bray, 554 F.3d at 1224
     (citation omitted).  Social Security rulings "constitute Social Security Administration
25   interpretations of the statute it administers and of its own regulations," and are given deference
     "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen,
26   882 F.2d 1453, 1457 (9th Cir. 1989).

1    the sequential evaluation process where: (i) the claimant was represented by counsel; (ii) the

2    record did not indicate that the claimant's obesity exacerbated the claimant's other impairments

3    (other than possibly her back pain), and (iii) the claimant failed to: (a) specify which listing the

4    claimant believed the claimant met or equaled; (b) set forth any evidence which would support the

5    diagnosis and findings of a listed impairment; and (c) point to any evidence of functional

6    limitations due to obesity which would have impacted the ALJ's analysis. Burch, 400 F.3d at

7    682–84 (finding that the ALJ adequately considered plaintiff's obesity in his RFC determination

8    and at various stages of the analysis, given that plaintiff had not pointed to "any evidence of

9    functional limitations due to obesity which would have impacted the ALJ's analysis").

10                    b.    Application

11            Here, the ALJ considered plaintiff's obesity throughout the sequential analysis.

12    (AR 16-22.)  For instance, the ALJ found that plaintiff's obesity was a "severe" impairment at

13    step two of the sequential analysis.  (AT 18.)  This finding means that the ALJ must have

14    determined that plaintiff's obesity had some material impact on plaintiff's ability to do basic work

15    activities.  See Webb, 433 F.3d at 686 ("An impairment or combination of impairments may be

16    found not severe *only* if the evidence establishes a slight abnormality that has no more than a

17    minimal effect on an individual's ability to work" (citations and quotation marks omitted).).

18    However, while the ALJ concluded plaintiff's obesity impacted plaintiff's ability to work insofar

19    as the obesity contributed to the existence of plaintiff's physical impairments, the ALJ also

20    concluded that plaintiff's obesity did not "increase the severity or functional limitations" of

21    plaintiff's impairments.  (AR 19.)  In other words, the ALJ concluded that plaintiff's obesity

22    "contributed to" the very existence of plaintiff's various impairments (i.e., "sleep apnea" and

23    "back pain") (AR 19), but also that obesity did not exacerbate plaintiff's *functional limitations*

24    and concluded that "the claimant's obesity in combination with his other alleged impairments

25    does not increase the severity or functional limitations of those impairments."  (AR 19.)

26            Plaintiff argues that the ALJ erred by finding that plaintiff's obesity contributed to

                                                    16

1   the very existence of his physical impairments and simultaneously finding that plaintiff's obesity

2   did not increase plaintiff's "functional limitations." (Pl.'s Mot. at 23.)  However, just as in Burch,

3   plaintiff has failed to point to any evidence of actual *functional limitations* due to obesity which

4   would have impacted the ALJ's RFC analysis.  See Burch, 400 F.3d at 682-84.[9]  While the ALJ's

5   decision could have been more clearly written in this regard, substantial evidence nonetheless

6   supports the ALJ's determination regarding plaintiff's functional limitations and, in any event, any

7   error in the ALJ's RFC determination was harmless as described below.

8           Plaintiff argues that "the record clearly documented" several functional limitations

9   arising from plaintiff's obesity.  (Pl.'s Mot. at 23-24.)

10                  For example, on March 1, 2006, Mr. Barrow was
                    diagnosed with plantar fasciitis secondary to severe pes
11                  planus and obesity.  TR 228.  On December 19, 2006,
                    Mr. Barrow was encouraged to lose weight and adhere to
12                  a low fat/low sodium diet in order to help his CKD Stage
                    III, hypertension, and dyslipidemia.  TR 287.  In May of
13                  2008, Mr. Barrow was assessed with Stage 4 CKD and
                    noted that the progression of his CKD might be
14                  'secondary to hyperfiltration or secondary to FSGS with
                    obesity.'  TR 350-351.

15

16  (Pl.'s Mot. at 24.)  These excerpted sentences do not support plaintiff's argument that his obesity

17  itself causes functional limitations, or the argument that his obesity exacerbates functional

18  limitations arising from other impairments.  Instead, these sentences demonstrate only that

19  plaintiff's obesity is related to the *existence of* his other impairments.  The quoted sentences do

20  not address any particular *functional limitations*, let alone functional limitations necessarily

21  arising from (or exacerbated by) plaintiff's obesity.  For instance, the fact that plaintiff was

22  diagnosed with plantar fasciitis secondary to severe pes planus and obesity does not render the

23

24           [9]  "Even on appeal, Burch has not pointed to any evidence of functional limitations due to
     obesity which would have impacted the ALJ's analysis. In fact, the only evidence in the record
25   relating to her obesity are notes from doctors who observed weight gain, indicated that Burch is
     obese, and recommended that she participate in a medically supervised weight loss program."
26   Burch, 400 F.3d at 683.

ALJ's RFC determination erroneous.  The fact that these impairments are related does not address whether or what *functional limitations* arise from plaintiff's obesity.  Similarly, the ALJ's RFC determination is not rendered erroneous because plaintiff was encouraged to lose weight and adhere to a low fat/low sodium diet in order to help his CKD Stage III, hypertension, and dyslipidemia, or because plaintiff was assessed with Stage 4 CKD secondary to hyperfiltration or secondary to FSGS with obesity.  The fact that plaintiff's physicians were able to link obesity to the existence of plaintiff's other conditions is not evidence of plaintiff's alleged *functional limitations*, nor is it evidence that obesity actually exacerbated the *functional limitations* arising from those conditions.

Plaintiff identifies no medical evidence indicating that he suffered particular *functional limitations* due to obesity, let alone limitations which would have materially impacted the ALJ's RFC analysis.  The medical evidence in the record does not support plaintiff's argument that his obesity exacerbated the functional limitations arising from his various severe and non-severe impairments.  See Burch, 400 F.3d at 682-84 (no error where plaintiff failed to point to any evidence of actual functional limitations due to obesity).  Although the record reveals that plaintiff's doctors encouraged him to lose weight (AR 287 ("have encouraged [plaintiff] to lose weight, adhere to low fat/low Na diet")), plaintiff has not highlighted portions of the record revealing actual *functional limitations* plaintiff suffered due to his weight.  Consistently, Dr. Hill, plaintiff's examining physician, noted plaintiff's obesity (AR 322-24) and conducted a physical exam, including examining plaintiff's "gait and stance" (both of which were "normal for [plaintiff's] weight") and plaintiff's "heel, toe, and tandem walk" (all of which were "adequately performed, considering [plaintiff's weight]), but *did not* suggest any obesity-related functional limitations beyond those noted in the ALJ's RFC assessment.  (AR 19).  The report of state agency non-examining physician, Dr. Dipsia (AR 248-52), is consistent with the ALJ's RFC assessment and does not suggest that any functional limitations arise from plaintiff's obesity.

The continuation of the above-quoted excerpt from plaintiff's brief also fails to

18

1   amount to evidence that renders the ALJ's RFC determination erroneous.  In arguing that the

2   record "clearly" demonstrates that plaintiff had functional limitations arising from obesity,

3   plaintiff notes:

> Mr. Barrow also testified that his weight was a barrier to him
> being able to work on a regular basis.  TR 39, 48.  He explained
> that sitting, standing on his feet, and having to get up and move
> about were all problematic because of his weight.  TR 39.  He
> also noted his back and feet problems in relationship to his
> obesity.  Id.

8   (Pl.'s Mot. at 24.)  Because plaintiff invokes his own testimony to support his argument that the

9   ALJ improperly found that obesity did not increase the functional limitations of his impairments

10  and thus rendered an erroneous RFC assessment, the undersigned will address whether plaintiff's

11  cited testimony, if taken as true, would have any impact upon the RFC assessment.  On a closer

12  review of the cited pages of the hearing transcript (AR 39, 48), however, plaintiff's cited

13  testimony does not support his argument that his obesity functionally limits his ability to work.

14         At page 48 of the hearing transcript, plaintiff testified regarding some difficulties

15  arising from his weight.  (AR 48.)  The ALJ asked, "other than maybe you're not as agile as you

16  used to be, tell me how that weight bothers you?  How does it keep you from working?" (Id.)

17  Plaintiff responded, "Uncomfortable in the back.  I see a chiropractor."  (Id.)  Plaintiff went on to

18  describe how his "back might go out" about "three or four times a year" for "two to three weeks,"

19  but explained that "pain medication helps it subside for maybe three or four, seven days and then I

20  have to go back again [for more pain medication]."  (Id.)

21         At page 39 of the hearing transcript, plaintiff testified that his weight posed a "little

22  problem" in his working, because it resulted in his "not being able just to sit in one setting, stand

23  in one setting too long.  Having to get up and move about."  (AR 39.)  Plaintiff also explained that

24  "standing on my feet" posed a problem in his working: "I got plantar fasciitis. So between the

25  combination of standing and sitting."  (Id.)  However, the ALJ pressed plaintiff regarding this

26  functional limitation.  The ALJ asked, "Can you – even with the problems, if you're allowed, if

1   you were in a situation where you could get up and down when you wanted, could you get through

2   the day as long as you could get up and walk around if you needed to and then sit down when you

3   needed to?"  (Id.)  Plaintiff responded, "Yeah that's – I can get up – yeah, I can get through a day

4   with being able to – yeah, to get up and sit down when I need to."  (Id.)  The ALJ clarified, "Okay.

5   All right.  So if you had a job like that . . . and it was something like counseling that you enjoyed

6   and that you were good at apparently, is there any reason why you couldn't do that today?"  (Id.)

7   Plaintiff responded candidly: "I just wouldn't want to work.  I don't want to work back with kids."

8   (Id.)  Plaintiff continued on to explain that he had "had it up to here" with kids and that the work

9   counseling children did not "pay" as much as he wanted.  (Id. at 39-40.)

10          Plaintiff's cited testimony at pages 39 and 48 of the transcript do not compellingly

11   support plaintiff's argument that "the record clearly documented" functional limitations arising

12   from plaintiff's obesity.  (Pl.'s Mot. at 23-24.)  Even taking plaintiff's above-quoted testimony as

13   absolutely credible, it does not render the ALJ's RFC determination erroneous.  In a nutshell, the

14   cited testimony shows only that plaintiff's back was "uncomfortable," in his assumption, because

15   of his weight (AR 48), and yet such testimony was followed by plaintiff's concession that pain

16   medication causes the discomfort to subside.  (Id.)  The remaining cited testimony shows that

17   plaintiff had difficulty "standing and sitting," again, in his assumption, because of his weight.

18   (AR 39.)  Yet such testimony was followed by plaintiff's concession that he *could* work in a job

19   where he could "get up and sit down when I need to" *and* that even if such a job existed, he still

20   simply "wouldn't want to work."  (Id.)  Even if taken as true, neither of the cited transcript

21   portions demonstrates that plaintiff's functional limitations (if they can be so labeled) necessarily

22   arose from plaintiff's obesity.  Plaintiff's "own speculation that [his] obesity impacts [his] ability

23   to work does not constitute evidence and falls short of meeting [his] burden of proof."  See

24   Williams v. Astrue, No. EDCV 10–1827 JC, 2011 WL 3319536, at * 2-4 (C.D. Cal. July 29,

25   2011) (unpublished).  Moreover, plaintiff has not convincingly argued that either his weight-

26   related back discomfort or his need to stand and sit at will are not adequately accommodated by

20

1    the ALJ's RFC assessment.

2         Accordingly, even if the ALJ made improper or needless mention of plaintiff's

3    need to lose weight and/or to exercise (AR 19-20) in rendering his RFC determination, any error

4    arising from these references was harmless. See Burch, 400 F.3d at 682-84; Carmickle, 533 F.3d

5    at 1162. This conclusion is because the record does not, as plaintiff argues, "clearly document"

6    functional limitations arising from plaintiff's obesity. (Pl.'s Mot. at 23-24.) Plaintiff's own cited

7    testimony regarding his so-called limitations – even if taken as credible – does not demonstrate

8    that such limitations necessarily arose from plaintiff's obesity. Moreover, a close reading of that

9    testimony reveals plaintiff's admissions that medication alleviated his weight-related back

10    discomfort *and* that while plaintiff could indeed work in a job that enabled him to sit and stand at

11    will, he would simply rather not work. This testimony actually undercuts plaintiff's argument that

12    he has prohibitive functional limitations. Finally, even if plaintiff's back discomfort and need to

13    sit and stand at will were assumed to be functional limitations and were assumed to arise from

14    plaintiff's obesity, plaintiff has not shown that the ALJ's RFC failed to adequately accommodate

15    these limitations.

16       D.     <u>The ALJ's Credibility Determination Was Either Properly Supported, And In Any</u>
<u>Event, Any Error In The Credibility Determination Was, At Most, Harmless</u>

17

18         Plaintiff's fourth argument is that the ALJ "failed to properly credit" plaintiff's

19    testimony regarding the nature and extent of his functional limitations. (Pl.'s Mot. at 26-27.) The

20    ALJ determined that plaintiff's testimony regarding his functional limitations was not credible

21    insofar as it conflicted with the ALJ's RFC assessment. (AR 19-20.) Specifically, the ALJ found

22    that "the claimant's statements concerning the intensity, persistence and limiting effects of [his]

23    symptoms are not credible to the extent that they are inconsistent with the residual functional

24    capacity assessment made herein." (AR 20.) Plaintiff challenges this credibility finding and its

25    implications upon the ALJ's RFC determination. (Pl.'s Mot. at 26-29.)

26         In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the

1  ALJ's task with respect to assessing a claimant's credibility:

2          To determine whether a claimant's testimony regarding subjective pain or
           symptoms is credible, an ALJ must engage in a two-step analysis.  First, the
3          ALJ must determine whether the claimant has presented objective medical
           evidence of an underlying impairment which could reasonably be expected
4          to produce the pain or other symptoms alleged.  The claimant, however,
           need not show that her impairment could reasonably be expected to cause
5          the severity of the symptom she has alleged; she need only show that it
           could reasonably have caused some degree of the symptom.  Thus, the ALJ
6          may not reject subjective symptom testimony . . . simply because there is no
           showing that the impairment can reasonably produce the degree of
7          symptom alleged.

8          Second, if the claimant meets this first test, and there is no evidence of
           malingering, the ALJ can reject the claimant's testimony about the severity
9          of her symptoms only by offering specific, clear and convincing reasons for
           doing so. . . .

10

11  504 F.3d at 1035-36 (citations and quotation marks omitted).  In weighing a claimant's credibility,

12  an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness,

13  inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct,

14  [claimant's] daily activities, [her] work record, and testimony from physicians and third parties

15  concerning the nature, severity, and effect of the symptoms of which [claimant] complains."

16  Thomas, 278 F.3d at 958-59 (modification in original) (quoting Light v. Soc. Sec. Admin., 119

17  F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial

18  evidence in the record, the court "may not engage in second-guessing." Id. at 959.

19          If an ALJ finds that a claimant's testimony relating to the intensity of his pain is

20  unreliable, the ALJ must make a credibility determination and explain why the testimony is

21  unpersuasive.  Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); accord

22  Valentine, 574 F.3d at 693.  The ALJ must point to "specific evidence in the record" undermining

23  the claimant's testimony.  Valentine, 574 F.3d at 693; Magallanes, 881 F.2d at 755.  Questions of

24  credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

25  Valentine, 574 F.3d at 693.  To find a claimant not credible, the ALJ may rely on internal

26  contradictions in the claimant's testimony, or on conflicts between the claimant's testimony and

22

1   conduct.  Light, 119 F.3d at 792; accord Batson, 359 F.3d at 1196-97.  When evidence reasonably

2   supports either confirming or reversing the ALJ's decision, the district court may not substitute its

3   judgment for ALJ's.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

4            Here, the ALJ found that plaintiff's medically determinable impairments could

5   reasonably be expected to produce some of the symptoms alleged by plaintiff, but that plaintiff's

6   statements concerning the intensity, persistence, and limiting effects of those symptoms were not

7   entirely credible.  (AR 20.)  Given the absence of evidence of malingering, the ALJ was required

8   to provide clear and convincing reasons in support of his adverse credibility finding.  See

9   Lingenfelter, 504 F.3d at 1035-36.  The ALJ provided clear and convincing reasons in support of

10  his credibility finding, and even if he erred in supplying one or more improper grounds to support

11  that finding, plaintiff has not demonstrated that such error(s) were anything more than harmless.

12            a.     The ALJ's Credibility Determination Was Properly Supported

13            The ALJ provided clear and convincing reasons for discrediting plaintiff's

14  testimony insofar as it conflicted with the ALJ's RFC assessment.  Plaintiff argues that the ALJ's

15  credibility determination was based upon three "specious" reasons: (1) a finding that plaintiff's

16  sleep apnea was "alleviated" with CPAP treatment; (2) a finding that plaintiff's kidney disease

17  was not presently disabling and would benefit with weight loss; and (3) a finding that there was

18  "no compelling evidence that the claimant's alleged impairments significantly impact his day-to-

19  day functioning."  (Pl.'s Mot. at 27-28.)  Plaintiff has not shown any of these reasons to be

20  "specious" or unsupported; indeed, each of them find support in the record as described below.

21  Further, plaintiff omits to mention other valid bases for the ALJ's credibility determination, such

22  as the fact that plaintiff was able to hold "a variety of jobs in spite of his impairments."  (AR 19.)

23            The ALJ gave several reasons for his credibility determination.  He noted that

24  plaintiff's sleep apnea was "alleviated with CPAP treatment," that plaintiff's kidney problems did

25  not pose any "present . . . significant[] adverse effects," and that plaintiff was able to hold "a

26  variety of jobs in spite of his impairments."  (AR 19.)  The ALJ concluded, after "careful

                                                      23

1    consideration of the evidence," that "[t]here simply is no compelling evidence that the claimant's

2    alleged impairments significantly impact his day-to-day functioning." (Id.)[10]  Plaintiff's testimony

3    on these issues conflicts with the medical evidence in the record as well as with other testimony

4    by plaintiff, and the ALJ was entitled to discount plaintiff's testimony accordingly.  See Light,

5    119 F.3d at 792; Batson, 359 F.3d at 1196-97.

6              i.     Sleep Apnea

7              The ALJ found plaintiff's sleep apnea to be a "severe" impairment (AR 18), but

8    specifically rejected plaintiff's testimony regarding any functional limitations arising from that

9    impairment insofar as it conflicted with his RFC assessment.  (AR 20.)  The ALJ specifically

10   found that "[t]he claimant's sleep apnea symptoms are indeed serious (i.e., the possibility of

11   falling asleep while driving) however, they are alleviated with CPAP treatment."  (Id.)  Plaintiff

12   argues that the ALJ improperly found that plaintiff's "sleep apnea was alleviated with CPAP

13   treatment," because "there is no evidence in the record indicating that [plaintiff's] sleep apnea was

14   'alleviated' by his use of the CPAP machine."  (Pl.'s Mot. at 27.)

15             Contrary to plaintiff's contention, the ALJ's rejection of plaintiff's testimony

16   regarding sleep apnea does find support in the record.  The ALJ rejected such testimony after

17   "careful consideration of the evidence," which included the medical record as well as plaintiff's

18   own statements during the hearing.  (AR 20.)  Plaintiff testified that the CPAP machine "helped

19   tremendously" with his apnea, language the ALJ specifically noted within his decision.  (AR 15;

20   53.)  During the hearing, the ALJ asked plaintiff, "Do you have any problems nodding off since

21

22        [10]  While the ALJ also appears to have based his credibility determination on the fact that
     plaintiff "was offered physical and hydro-therapy for weight loss" and declined (AR 19), to the
23   extent that this basis for the credibility determination violated Orn, there are sufficient remaining
     grounds for the credibility determination.  Batson, 359 F.3d at 1197 ("Any error the ALJ may
24   have committed . . was in our view harmless and does not negate the validity of the ALJ's
     ultimate conclusion that Batson's testimony was not credible."); Carmickle, 533 F.3d at 1162 (if
25   one of the ALJ's reasons is invalid, the question is whether the ALJ's decision remains legally
     valid, despite such error, based on the ALJ's "remaining reasoning and ultimate credibility
26   determination.")

1    you use the machine?"  (Id.)  Plaintiff responded, "There's still general nodding off, but the CPAP

2    machine – I don't go anywhere without it.  I don't – if I have a girlfriend and she doesn't want a

3    sleep apnea machine at her house, I go home."  (Id.)  After further questioning by the ALJ,

4    plaintiff went on to testify that he still nods off, a "couple of times per day," when he's "just

5    sitting and watching TV."  (Id.)

6              While plaintiff is correct that the record contains some evidence of plaintiff's

7    nodding off in the daytime, the record also contains evidence that plaintiff's sleep apnea was

8    alleviated with CPAP treatment.  "Where evidence is susceptible to more than one rational

9    interpretation," the Commissioner's conclusion must be upheld.  Burch, 400 F.3d at 679.  To find

10   a claimant not credible, the ALJ may rely on internal contradictions in the claimant's testimony,

11   or on conflicts between the claimant's testimony and conduct.  Light, 119 F.3d at 792; accord

12   Batson, 359 F.3d at 1196-97.  Here, the ALJ's decision describes both sorts of conflicts.  Indeed,

13   aside from testifying that his CPAP machine "helped tremendously," plaintiff also testified that he

14   drove himself to the hearing (AR 14), ostensibly without nodding off — a fact the ALJ noted.

15   (AR 45.)  The ALJ specifically found that plaintiff had a driver's license.  (Id.)  The ALJ also

16   gave substantial weight to the RFC assessment of Dr. Dipsia (AR 20), who did not see fit to

17   address plaintiff's nodding off or sleep apnea within the assessment.  (AR 248-52.)  Finally, the

18   ALJ repeatedly noted that plaintiff "has held a variety of jobs in spite of his impairments," which

19   supports the finding that plaintiff's nodding off has not materially impacted his working.  (AR 19-

20   20, 37-44 (plaintiff testified that he did not want to work with kids, did not want to work as an

21   unarmed security guard because it did not pay enough, and that he was terminated from his

22   security guard job for a mistake, not inability).)  The ALJ's decision gave specific, clear and

23   convincing reasons for discounting plaintiff's testimony regarding nodding off insofar as that

24   testimony conflicted with his RFC assessment.  (AR 20.)

25              ii.    Kidney Problems

26              The ALJ partially based his credibility determination on the fact that plaintiff's

25

1    kidney problems were not presently disabling and would benefit with weight loss.  (AR 20.)

2    While plaintiff claims that "Stage 4" chronic kidney disease, which plaintiff was "assessed with,"

3    involves various symptoms "from which [plaintiff] suffered" (Pl.'s Mot. at 27), the fact that Stage

4    4 kidney disease typically involves certain symptoms does not prove either that plaintiff had such

5    symptoms or, more importantly, that they caused particular *functional limitations* that impacted

6    plaintiff's ability to work.  Further, the ALJ's finding regarding plaintiff's kidney problems is

7    supported by substantial evidence: the ALJ specifically noted plaintiff's testimony that his kidney

8    disease "does not have a significantly adverse impact on him yet."  (AR 20; 49-50.)  If plaintiff

9    did not attribute any functional limitations to kidney disease, plaintiff suggests no reason why the

10   ALJ needed to do so either.  To the extent the ALJ made an improper assumption that plaintiff's

11   kidney disease would "benefit" with weight loss and partially based his credibility determination

12   thereon, the ALJ nonetheless gave other valid reasons for his determination and substantial

13   evidence is in support and any such error was harmless.  See Batson, 359 F.3d at 1196-97.

14                    iii.    Lack Of Evidence Suggesting Limits On Plaintiff's Functioning, And
                              Evidence Showing Plaintiff Previously Worked Despite His Impairments
15

16           The ALJ partially based his credibility determination on a lack of evidence

17   suggesting limits on plaintiff's day-to-day functioning, and on the fact that plaintiff previously

18   held a variety of jobs despite his various impairments.  (AR 20.)  Plaintiff argues that he testified

19   that

20                    his back hurt, his feet hurt, that he nodded off during the day
                      due to his sleep apnea, didn't sleep through the night, and
21                    experienced shortness of breath when he walked even short
                      distances.  He reported that during his walks he usually had
22                    to take three breaks from five to ten minutes and that when
                      he walked over a quarter of a mile he experienced body
23                    aches, tiredness, and breathing problems.  TR 56-57.  He
                      reported that he could stand comfortably for approximately
24                    10 to 15 minutes before he needed to sit down or take his
                      shoes off and that once he sat down there was no getting
25                    back up.  TR 59.

26   (Pl.'s Mot. at 28.)  Plaintiff's summary of his testimony does not render the ALJ's finding

                                                    26

1   unsupported by substantial evidence.  The ALJ noted, and the record confirms, that plaintiff was

2   able to perform a number of jobs, including after his original application date.  (AR 19, 20, 37-44

3   (revealing that, for instance, plaintiff worked as a juvenile counselor and security officer despite

4   many impairments).)  The ALJ found that plaintiff does floor exercises, read books and

5   magazines, helps his mother and goes shopping for her, cares for his own finances, watches TV,

6   takes care of his own personal hygiene and vacuums, loads laundry, and loads the dishwasher.

7   (AR 14.)  The ALJ also noted that plaintiff has a driver's license and can drive.  (AR 14, 45.)  If a

8   claimant engages in numerous daily activities involving skills that could be transferred to the

9   workplace, the ALJ may discredit the claimant's allegations upon making specific findings

10  relating to those activities.  See Burch, 400 F.3d at 680-81 (citing Fair v. Bowen, 885 F.2d 597,

11  603 (9th Cir. 1989); Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix

12  meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of

13  claimant's ability to work)).  The ALJ also gave weight to Dr. Dipsia's RFC assessment, which

14  did not reveal any limitations that would impact plaintiff's day-to-day functionality – least not in a

15  way that conflicts with the ALJ's RFC finding.  (AR 20, 248-52.)

16          It cannot be said that the ALJ's credibility determination was not supported by

17  specific, clear and convincing reasons or by reasons that are not supported by substantial

18  evidence.  Plaintiff's testimony conflicted with other items of evidence in the record, including

19  evidence of his own behavior (i.e., previous work).  See Light, 119 F.3d at 792; Batson, 359 F.3d

20  at 1196-97.  Accordingly, in weighing plaintiff's credibility, the ALJ properly considered, among

21  other things, inconsistencies in plaintiff's testimony and between his testimony and his conduct,

22  plaintiff's work record, and evidence from physicians concerning the nature, severity, and effect

23  of the symptoms of which plaintiff complains.  See Thomas, 278 F.3d at 958-59.  In any event,

24  when evidence reasonably supports either confirming or reversing the ALJ's decision, the district

25  court may not substitute its judgment for ALJ's.  See Tackett, 180 F.3d at 1098.

26  ////

1                    b.        Any Error In The Credibility Determination Was, At Most, Harmless

2                    Moreover, plaintiff has not compellingly shown that his discounted testimony,

3    even if accepted, would have materially altered the ALJ's RFC determination, and thus has not

4    shown that any error by the ALJ was more than harmless.  In other words, assuming *arguendo* that

5    plaintiff's testimony regarding his functional limitations was indeed fully credible and that the

6    ALJ erroneously discounted it, an examination of the substance of the testimony reveals that any

7    error by the ALJ was harmless.  See Batson, 359 F.3d at 1195-97.  As the court in Batson held, "in

8    light of all the other reasons given by the ALJ for [plaintiff's] lack of credibility and his residual

9    functional capacity, and in light of the objective medical evidence on which the ALJ relied, there

10   was substantial evidence supporting the ALJ's decision.  Any error the ALJ may have committed .

11   . . to the extent that [it] bore on an assessment of ability to work, was in our view harmless and

12   does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not

13   credible."  Batson, 359 F.3d at 1195-97 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir.

14   1990) (applying the harmless error standard); Booz v. Sec'y of Health and Human Serv., 734 F.2d

15   1378, 1380 (9th Cir. 1984) (same)).  Here, the record confirms that the ALJ's RFC determination

16   accounted for the sorts of functional limitations plaintiff claims he had.

17                    As stated above, the ALJ determined that plaintiff has:

18            [T]he residual functional capacity to perform essentially the full
               range of light work as defined in 20 C.F.R. 404.1567(b) and
19            416.967(b), but due to pain, needs to be able to alternate between
               sitting and standing and avoid work requiring good distant visual
20            acuity, depth perception, and broad field of vision.

21   (AR 22.)  As the ALJ's decision further explained,

22            Light work involves lifting no more than 20 pounds at a time with
               frequent lifting or carrying of objects weighing up to ten pounds.
23            Even though the weight lifted may be very little, a job is in this
               category when it requires a good deal of walking or standing, or
24            when it involves sitting most of the time with some pushing and
               pulling of arm or leg controls.  To be considered capable of
25            performing a full range of light work, an individual must have the
               ability to do substantially all of these activities.  If someone can do
26            light work, we determine that he can also do sedentary work, unless

                                                       28

1          there are additional limiting factors such as loss of fine dexterity or
          inability to sit for long periods.

2

3  (AR 19.)

4          As already described above, plaintiff argues that the ALJ erred in discounting

5  plaintiff's testimony on the following topics:

6          Mr. Barrow testified that his back hurt, his feet hurt, that he nodded
          off during the day due to his sleep apnea, didn't sleep through the
7          night, and experienced shortness of breath when he walked even
          short distances.  He reported that during his walks he usually had to
8          take three breaks from five to ten minutes and that when he walked
          over a quarter of a mile he experienced body aches, tiredness, and
9          breathing problems.  TR 56-57.  He reported that he could stand
          comfortably for approximately 10 to 15 minutes before he needed to
10         sit down or take his shoes off and that once he sat down there was
          no getting back up.  TR 59.

11

12  (Pl.'s Mot. at 28.)[11]  On plaintiff's framing, the ALJ improperly discounted testimony regarding:

13  (1) plaintiff's back pain; (2) plaintiff's need to sit down after 10 to 15 minutes; (3) plaintiff's foot

14  pain; (4) plaintiff's shortness of breath, tiredness, and body aches when walking over a quarter of

15  a mile; (5) plaintiff's nodding off during the day due to sleep apnea at night.  (Id.)  The

16  undersigned addresses each of these so-called limitations below.  As to the first four so-called

17  limitations, plaintiff has not compellingly explained how, even when plaintiff's testimony is taken

18  as true, the ALJ's "light work" RFC assessment fails to accommodate those limitations.  As to the

19  last limitation – plaintiff's nodding off during the day – while the ALJ's RFC assessment may not

20  accommodate daytime sleepiness, the ALJ's decision provided sufficient reasons for rejecting

21  plaintiff's testimony regarding functional limitations arising from sleep apnea (as described

22

23       [11]  While plaintiff raises the issue of his kidney disease at the beginning of his challenge
    to the ALJ's credibility finding, plaintiff identifies no specific *testimony* from plaintiff regarding
24    functional limitations arising from his kidney disease.  (Pl.'s Mot. at 26-27.)  As a result, plaintiff
    has not compellingly argued that the ALJ improperly discounted particular kidney-related
25    testimony as a result of his adverse credibility determination.  Likewise, plaintiff has not
    compellingly argued that any particular kidney-related testimony, if accepted, would have
26    materially altered the ALJ's RFC finding.

1  above), and the undersigned will not readdress that issue.

2              i.      (1)  Back Pain And (2) Need To Sit Down After 10 To 15 Minutes

3              Plaintiff argues the ALJ improperly discounted plaintiff's testimony regarding his

4  back pain and his need to sit down after ten to fifteen minutes.  (Pl.'s Mot. at 28 (citing AR 59).)

5  Plaintiff's testimony regarding his so-called functional limitations of back pain and the need to sit

6  and stand at will was addressed above in the analysis of the ALJ's RFC determination and obesity.

7  As noted above, plaintiff testified that his obesity caused an "uncomfortable" back.  (AR 48

8  (although plaintiff clarified that this discomfort was alleviated by pain medication)).  Plaintiff also

9  testified that he had difficulty "standing on my feet."  (AR 39 (although plaintiff clarified that this

10  difficulty would be alleviated by a job where he could sit and stand as he wanted, and clarified

11  that if such a job existed, he "just wouldn't want to work.")).

12              For the reasons stated above in Part "C," plaintiff's testimony regarding his back

13  discomfort and need to sit and stand at will, even if taken as true, do not reveal error in the ALJ's

14  RFC analysis.  Indeed, the ALJ's RFC assessment specifically permits plaintiff to change his

15  position because he "needs to be able to alternate between sitting and standing."  (AR 19.)  It also

16  limits plaintiff to "light" work, which limits the weight plaintiff could be required to lift and could

17  keep plaintiff "sitting most of the time," (with, of course, the ability to "alternate between sitting

18  and standing" at will), neither of which plaintiff has shown to be prohibitive despite plaintiff's

19  "uncomfortable" back.  (Id.; AR 48.)  Thus, even if the ALJ erroneously discounted plaintiff's

20  testimony on these particular alleged limitations, plaintiff has not shown that the ALJ's ultimate

21  RFC finding fails to accommodate either limitation.

22              ii.     (3) Foot Pain And (4) Shortness Of Breath, Tiredness, And Body Aches
                       When Walking Over A Quarter Of A Mile
23

24              Plaintiff argues the ALJ improperly discounted plaintiff's testimony regarding his

25  foot pain.  (Pl.'s Mot. at 28 (citing AR 56-57).)  Plaintiff also argues the ALJ improperly

26  discounted plaintiff's testimony regarding experiencing shortness of breath and body aches when

                                                    30

1   walking for over a quarter mile.  (Id. (citing AR 56-57.))

2          Taking plaintiff's testimony regarding these functional limitations as true, plaintiff

3   has failed to show that the ALJ's RFC assessment would not accommodate the "foot pain" and

4   "shortness of breath"/walking functional limitations such testimony describes.  The ALJ's RFC

5   assessment accommodates plaintiff's foot pain/plantar fasciitis by permitting plaintiff to keep off

6   his feet and "sit most of the time," and, as a result, not requiring plaintiff to walk quarter-mile

7   distances or become out of breath.  (AR 19.)  Accordingly, any error in the ALJ's assessment of

8   plaintiff's credibility on these topics was harmless.  See Burch, 400 F.3d at 679; Batson, 359 F.3d

9   at 1197 ("Any error the ALJ may have committed . . . was in our view harmless and does not

10  negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.");

11  Carmickle, 533 F.3d at 1162 (if one of the ALJ's reasons is invalid, the question is whether the

12  ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning

13  and ultimate credibility determination.")  It cannot be said that the ALJ discounted plaintiff's

14  testimony for no reason or for reasons without support in the record.  Likewise, because the

15  undersigned finds that the ALJ did not improperly discount plaintiff's testimony and that any error

16  in the ALJ's credibility determination was harmless, the undersigned also finds no error in the

17  ALJ's failure to include the so-called limitations suggested in such testimony as part of the

18  hypothetical posed to the VE at step five.

19      IV.   CONCLUSION

20          Based on the foregoing, IT IS HEREBY ORDERED that:

21          1.    Plaintiff's motion for summary judgment is denied;

22          2.    The Commissioner's cross-motion for summary judgment is granted; and

23  ////

24  ////

25  ////

26  ////

1          3.     The Clerk is directed to enter a judgment affirming the decision of the

2    Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

3    DATED:  September 26 2011

4

5                                                          KENDALL J. NEWMAN

6                                                          UNITED STATES MAGISTRATE JUDGE